BILLY, (FENDALL v.) See Case No. 4,725.

## Case No. 1,410.

BILSON v. MANUFACTURERS' INS. CO.

[Brunner, Col. Cas. 290;[1] 7 Am. Law Reg. 661; 3 Phila. 547; 16 Leg. Int. 228.]

Circuit Court, E. D. Pennsylvania. July 9, 1859.

### INSURANCE—ASSIGNMENT OF POLICY.

Under a clause in a fire insurance policy that the liability of the insurers should cease upon assignment of the policy without their consent, *held*, that an assignment to a mortgagee from whom the insurers subsequently received the premium for a renewal was by such act ratified by them: but a subsequent conveyance of the fee by the mortgagor to the mortgagee would avoid the policy. A transfer to the mortgagee as collateral security,, with the assent of the insurers, would not convert the contract into a new one on his interest.

[At law. Action by Bilson against the Manufacturers' Insurance Company on a policy of insurance. Verdict for plaintiff. Defendant moves for new trial, which was granted.]

Before GRIER, Circuit Justice, and CADWALADER, District Judge.

CADWALADER, District Judge. The defendants insured the plaintiff in fifteen hundred dollars against loss by fire, on a building in Baltimore, for one year from the 14th of March, 1856. The policy provided that the defendants' liability should cease in case of a total or partial assignment of the policy, without their consent in writing indorsed upon it; and also declared that the policy should become void in case of any transfer, or termination of the interest of the insured (meaning interest in the building or subject of insurance),either by sale or otherwise. It contained a provision that the risk not being

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]

changed, the insurance might be continued for such further time as might be agreed upon; the premium for the renewal being paid, and its payment indorsed, or a receipt for it given. The plaintiff, on the 12th of September, 1856, subscribed, on the back of the policy, an assignment of all his title and interest in it, to William Conine. This party's interest was under a mortgage of the premises insured, executed by the plaintiff, to secure the payment of a debt greater in amount than the sum insured. This assignment was made by filling up, in a fair hand, and subscribing, a blank form printed in large type. Conine and the plaintiff resided in Baltimore, where the defendants had a resident agent, through whom the above-mentioned insurance and the renewal mentioned below were effected. On the 14th of March, 1857, the defendants renewed the insurance for another year. Their agent's receipt for the premium for this renewal was indorsed upon the policy directly under the above-mentioned assignment. This assignment was in such visual juxtaposition that the agent could not have failed to see the whole of it, when he subscribed the receipt, without an extraordinary want of attention to what was before him for inspection. It was proved that Conine had paid this premium for the renewal of the insurance; and there seemed to be no reason to doubt that he was the person for whose benefit the insurance was intended by the parties in Baltimore to continue in force. After this renewal the plaintiff, by a deed, of which the existence was not made known to the defendants, for a pecuniary consideration in addition to the mortgage debt, conveyed the equity of redemption of the premises insured to the mortgagee, Conine, absolutely in fee. After the plaintiff's interest had been thus entirely divested, the building was, before the end of the second year, consumed by fire. The loss thus incurred was of an amount greater than the sum insured.

The defendants at the trial objected to the plaintiff's recovery, on the ground that his assignment of the policy to Conine having been made without the written consent required by the policy had annulled the insurance. On this point the court instructed the jury that the evidence would justify them in finding that the defendants' agent, when he renewed the insurance, was aware of the existence and contents of the assignment, which was then, in effect, exhibited to him, adding, that if the jury should so find, the act of renewal included, sufficiently, the consent required by the policy. The jury found a verdict for the plaintiff. The court is of opinion that, upon the point on which the instruction was given the verdict was right, and that the instruction, as to this point, was not erroneous.

But the court is also of opinion that this is not the point on which the decision of the

case properly depends. The question of interest in the insurance as distinguished from that of interest in the subject of insurance was alone considered at the trial. The difficulty in sustaining the verdict arises from the fact that the conveyance of the equity of redemption by the plaintiff to Conine changed entirely the interest on the subject of insurance. As the previous mortgage debt had in amount exceeded the sum insured, Conine's acceptance of this conveyance might, possibly, not have modified substantially his interest in the insurance, as it would have been retained by him if the defendants had approved of the conveyance. But be this as it may, the conveyance converted his interest in the subject of insurance from that of a mere security for a debt into an absolute, exclusive ownership; and at the same time determined entirely the plaintiff's interest in the subject. Though attention may not have been particularly directed at the trial to the effect of this change of interest, the defendants, if it entirely discharged them from liability, ought not to be deprived of the benefit of it on a motion for a new trial.

Another point which has been taken on behalf of the defendants is, that though an action of assumpsit, at the suit of Conine, had been sustainable upon the act of renewal as a contract with him, the present action of assumpsit by the party originally insured, who, on the renewal was neither the promisee nor the party to whom the loss was to be paid, cannot be sustained. If the decision in Tillou v. Kingston Mut. Ins. Co., 1 Seld. [5 N. Y.] 406, were law, there could, upon the facts of the present case, have been a recovery in an action at the suit of Conine. That case was adjudged by the court of appeals of New York in 1851. Three partners, owning a mill, in which they conducted their joint business, held a policy of insurance on it against fire, which, like the policy now in question, contained a provision that it should become void if the property insured was alienated by sale, or otherwise. The policy was assigned by the parties insured, with the assent of the insurers, to secure a mortgage on the mill for a debt of less amount than the sum insured. One of the partners insured, on afterwards retiring from the business, conveyed his interest in the mill to the other two owners. It was destroyed subsequently by fire. Two points were decided: the first, that this conveyance by one partner to the others had, except as to the mortgage, annulled the insurance; the second, that the mortgagee was, nevertheless, to the amount of the mortgage debt, entitled to the benefit of the insurance.

The decision of the first point, that, where partners are insured, an assignment by one of them to the others annuls the contract of insurance as between them and the insurer, has been questioned in a subsequent extrajudicial dictum of the same court. 3 Smith, [17 N. Y.] 412. But the decision on this point

has been followed in a direct adjudication by the supreme court of Pennsylvania, in the recent case of Finley v. Lycoming County Mut. Ins. Co., [30 Pa. St. 311.] In this case the court said: "That a sale by one partner to the other is within the prohibition, cannot be doubted. There is no exception in its favor in the instrument; and the terms used give no reason to imply any." These terms were the same as in the New York case. The partner who, without the consent of the insurer, conveys his interest in the subject of insurance to his co-partners gives them, from thenceforth, an exclusive dominion and control where he had, previously, the right of participating in any control or dominion that could have been exercised. He thereby ceases to be a protector of the property insured against fire from fraud, or from any other cause for which the personal identity of a party insured can be material to an insurer. The decision on this point, therefore, appears to have been founded in sound legal reason.

On the second point the decision was founded on the assumed reason that the approval by the insurers of the assignment of the policy to the mortgagee had constituted a distinct and independent contract by them, with him, entitling him to the benefit of the insurance, in such a manner that his interest was not liable to be affected by subsequent acts or omissions of the party originally insured. On this point the decision has been overruled by the court of appeals of New York in the recent cases of Grosvenor v. Atlantic Fire Ins. Co., 3 Smith, [17 N. Y.] 391, and Buffalo Steam-Engine Works v. Sun Mut. Ins. Co., Id. 401, 414. As the law of New York is now settled, the assignment of a policy of insurance against fire to a mortgagee, with the assent of the insurer, merely gives to the mortgagee the right of requiring that the amount insured shall, to the extent of the mortgaged debt, be paid to him whenever it would afterwards have been recoverable by the mortgagor if no such assignment had been made. The approval of the assignment by the insurer does not convert his former contract of insurance into a new one for the independent insurance of the mortgagee. Unless the mortgagor could have recovered, if no assignment had been made, there can be no recovery of the insurance by or for the mortgagee. Therefore, a subsequent alienation of the equity of redemption by the mortgagor, made before any loss by fire, without the consent or approval of the insurer, annuls the insurance as to both mortgagor and mortgagee.

The cases reported in 7 Casey, [31 Pa. St.] 430, 8 Cush. 133, 136, 137, and 10 Cush. 352, 353, show that a like doctrine on the subject prevails in Pennsylvania and in Massachusetts. In [Carpenter v. Providence Washington Ins. Co.,] 16 Pet. [41 U. S.] 501, 502, Judge Story, in delivering the opinion of the supreme court, said that if "a mortgagor pro-

cures a policy on the property against fire, and he afterwards assigns the policy to the mortgagee with the consent of the underwriters (if that is required by the contract to give it validity) as collateral security, that assignment operates solely as an equitable transfer of the policy, so as to enable the mortgagee to recover the amount due in case of loss. But it does not displace the interest of the mortgagor in the premises insured. On the contrary, the insurance is still his insurance, and on his property, and for his account. And so essential is this that if the mortgagor should transfer the property to a third person, without the consent of the underwriters, so as to divest all his interest therein, and then a loss should occur, no recovery can be had therefor against the underwriters, because the assured has ceased to have any interest therein, and the purchaser has no right or interest in the policy."

Consequently, if in the present case the conveyance which divested the plaintiff's interest had been to another person than the mortgagee, the insurance would, from the date of such conveyance, have been to all intents and purposes at an end. The authorities define so clearly the rule of decision, and the principle from which it is deduced, that we would not be at liberty to consider the convenience or expediency of the rule, or to inquire into probabilities of justice, or injustice, in the result of its ordinary application. The comparative magnitudes of the mortgage debt, and the sum insured, cannot affect the question of the application of the rule. Nor can its application be affected by the circumstance that the person to whom the absolute conveyance in fee has been made was the same party to whom the policy had been previously assigned with the assent of the insurers. If the question depends upon the change of interest, not the insurance, but in the subject of insurance, these distinctions cannot be attended with any material difference. We have seen that the approval by the defendants of the assignment of the policy to Conine, though a recognition of him as the substitute of the plaintiff to receive the payment of a loss, had not been a dispensation with any former condition of the contract as to a change in the ownership of the subject of insurance. In two of the cases which have been cited the transfer by a partner to his co-partners of his interest in an insurance of property of their firm had introduced no new person as a party insured. The doubt in those cases did not arise from the identity of the person, but from the identity of the character of the interest which, by the transfer, had been changed as to the remaining partners in proportion, but not in kind, though it had been absolutely determined as to the retiring partner.

In the present case, not only was the plaintiff's interest, and with it his protective dominion and control, forever determined by the conveyance in question, but this dominion and control were irrevocably vested in Conine, by whom they could not previously have been exercised, and the character of whose interest was thus entirely changed. His personal identity as mortgagee was, therefore, so far as the reason of the rule is concerned, immaterial. The case thus appears to be completely covered by the authorities. They show that there could not be a recovery of the insurance in an action at the suit of either Conine or the present plaintiff. The verdict must, therefore, be set aside, and a new trial ordered.

GRIER, Circuit Justice. I fully concur with my Brother CADWALADER in all his views as above expressed.