[Civ. No. 6993. Second Appellate District, Division Two.—October 30, 1931.]

CATHERINE F. AUSTIN, Respondent, v. AMERICAN SURETY COMPANY OF NEW YORK (a Corporation), Appellant.

Haight, Mathes & Sheppard, James C. Sheppard and G. Allen Bisbee for Appellant.

Cameron & Perkins for Respondent.

CRAIG, Acting P. J.—Judgment having been rendered in favor of the plaintiff, against the defendant as surety of one B. F. McKee, a real estate broker, in an action sounding in fraud, said surety appealed.

It is undisputed that McKee was a regularly licensed realtor, that he was employed as such and engaged in selling upon installments acreage known as Ramola Farms, that he obtained from the respondent a contract to purchase three acres therein, on account of which she exchanged other realty and a promissory note, which was paid; that thereafter he obtained from the respondent other real property upon an agreement that he would dispose of it for her, and that he converted the proceeds of sale and of respondent's check to his own use. Excerpts from her testimony reveal that McKee promised respondent that "if I would give up my contract he would sell the lot for me and get my money out of the lot, and that he would sell those four acres without any added expense beside the $175 which I gave him, and he would get my money, the $1456 out of the Santa Monica lot. . . . He gave me two contracts which I signed, for my equity in my Santa

Monica lot. . . . This lot that I turned over to him was the last Santa Monica lot that I had. I saw McKee in August, 1925, and never saw him again.'' It is conceded that respondent was indebted to the original owner on account of the purchase price of the Santa Monica property, and that she had not completed paying for the Ramola land.

■ It is at first insisted that appellant's liability under its realtor's bond was confined to sales of real estate only, that ''real estate'' as defined by the common law consists exclusively of lands, tenements and hereditaments'', and hence that respondent's equity in the property sold by McKee was not legally the subject of a transaction embraced within the provisions of the broker's bond. Such an *equity* represents a share or interest commensurate with the amount paid upon the whole purchase price which one holds. An equitable interest is an interest in land. (*McIlvaine* v. *Smith,* 42 Mo. 55 [97 Am. Dec. 295].) An equitable estate is the interest which a man has in lands, tenements and hereditaments. (*Avery's Lessee* v. *Dufrees,* 9 Ohio, 145; *In re Qualifications of Electors,* 19 R. I. 387 [35 Atl. 213]; *Rainey* v. *McQueen,* 121 Ala. 191 [25 South. 920]; *Pogue* v. *Simon,* 47 Or. 6, 114 Am. St. Rep. 903, 8 Ann. Cas. 474 [81 Pac. 566].) The term ''real property'' embraces such an interest in realty, or lands, legal or equitable, as may lie in contracts, executory or executed. (*Fish* v. *Fowlie,* 58 Cal. 337.) Section 2 of the act of 1919 (Stats. 1919, chap. 605, p. 1252), enacted among other things ''to define real estate brokers'', designates a broker as ''a person . . . who, for a compensation, sells, or offers for sale, buys, or offers to buy, . . . real estate . . . for others as a whole or partial vocation''. Appellant's contract forming the basis of this action expressly provided that if the said B. F. McKee should ''faithfully perform every undertaking entered into by him as a licensed real estate broker under the said act, and acts amendatory thereof, then the above obligation to be void; otherwise to remain in full force and effect; and every person injured by the failure of said real estate broker to perform his duties or comply with the provisions of the above named act or acts amendatory thereof, shall have the right in his own name to commence and maintain an action against the above named real estate broker and sureties for the recovery of any damage sustained . . . ''. Appellant's circuitous

reasoning leads but to the conclusion that the licensed broker's failure faithfully to perform his duties in the sale of real estate, to the damage of respondent, brought him and his surety within the purview of the statute and of the undertaking which was executed for her protection.

It is next contended that the $175 mentioned was in fact a part of the consideration, rather than a commission to McKee, and that if he was not in this instance acting as a broker "for a compensation", there could be no liability. We do not so interpret the Real Estate Brokers' Act. Since he was licensed and employed as "a person who for a compensation sells" real estate we are at a loss to conceive of an instance wherein the failure or refusal of such a broker to receive compensation could so prejudice the surety's rights as to abrogate its obligation to the public. Neither logic nor authority is suggested which tends to absolve from blame one who defrauds a client both of land and of the consideration. Further, since the jury were instructed that the plaintiff could not recover unless an employment were shown the verdict for the plaintiff amounted to an implied finding that McKee was employed in this instance as a broker and that his work was performed in that capacity. Without reciting the evidence in detail it is sufficient to say that it would amply support a finding to that effect.

The appellant seeks to invoke the statute of frauds as a bar to recovery by the contention that aside from respondent's checks there was no evidence in writing of the agreement to sell her properties. But specific performance is neither an appropriate, available or asserted remedy at this time. The statute does not limit the right of recovery from a surety to suits upon notes or memoranda signed by the parties defrauded. The contract guarantees the faithful performance by the broker of his duties as a salesman, among which duties is the self-evident fidelity due to the client in handling the proceeds of his real estate.

Interest upon the amount alleged to have been the value of respondent's lot at Santa Monica, and for which the broker had agreed to negotiate a sale, was allowed by the jury, from the date of the defalcation. The appellant resists the inclusion of this item upon the theory that in an action for unliquidated damages, as for recovery upon a contractor's bond guaranteeing the construction of buildings,

interest may be allowed only from the date of the judgment. We think the cases are to be distinguished by obvious characteristics. In the case cited by appellant it was said that the test is "whether or not the sum found to be due was known and admitted by the appellant to be due to the respondent. . . . It is apparent that until the trial court determined the cost of completing the building . . . the amount, if any, due from appellant to respondent upon the bond in question could not be fixed." (*Perry* v. *Magneson*, 207 Cal. 617, 279 Pac. 850].) In the instant transaction McKee agreed to dispose of Mrs Austin's property for the purpose of aiding in the financing of other properties, and to return to her the sum of $1456, which amount was demanded in the complaint against McKee and his surety. It would scarcely be urged that the principal was not liable for the proceeds of the sale from the date of its consummation, with interest from that date. The liability of a surety is the same as that of the principal. (*Damon* v. *Pardow*, 34 Cal. 278; *Harlan* v. *Ely*, 55 Cal. 340; *California Nat. Bank* v. *Ginty*, 108 Cal. 148 [41 Pac. 38].) We are not confronted with the problem of determining the reasonableness of the jury's finding upon an unliquidated demand for failure to effect a sale. The sole question is, whether or not it may be said as a matter of law under an obligation to "faithfully perform every undertaking entered into by him as a licensed real estate broker under the said act", the jury erred in finding McKee liable and his surety bound to respond in the amount converted to his use after sale according to specific agreement between the broker and the obligee. We think the verdict and judgment wholly warranted by the record.

The judgment is affirmed.

Thompson (Ira F.), J., and Fricke, J., *pro tem.*, concurred.